UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD and
BLUE CROSS NETWORK OF MICHIGAN,

                    Plaintiffs,                  Case Number 19-13153
                                                     Honorable David M. Lawson

v.

ENDO PHARAMACEUTICALS, TEIKOKU
PHARMA USA, INC., TEIKOKU SEIYAKU
CO., LTD., ALLERGAN PLC, WATSON
PHARMACEUTICALS, INC. and
WATSON LABORATORIES, INC.,

                    Defendants.
_____/

## OPINION AND ORDER GRANTING MOTION TO REMAND

This case is an outgrowth of a series of antitrust lawsuits in a concluded multidistrict litigation that was pending in the Northern District of California. Several insurers and end users of the drug Lidoderm sued these defendants and others for conspiring to delay the introduction of a cheaper generic version of the medication into the marketplace. In the present case, Blue Cross brought an action in state court for itself and as the claims administrator for its self-funded customers alleging the same harm. However, the basis for these claims is not the Sherman Act, but rather its state-law counterpart, the Michigan Antitrust Reform Act (MARA), Mich. Comp. Laws Ann. §§ 445.771 *et seq.* The defendants removed the case alleging diversity jurisdiction, since no federal question is raised on the face of the complaint. Blue Cross has moved to remand the case, arguing that the Court must consider the citizenship of its self-funded customers, even though they are not named parties, when determining if there is complete diversity between the plaintiffs and all the defendants. Because of the nature of the alleged harm and the relief sought,

the Court agrees that must be done.  And because some of the self-funded plan customers share citizenship with some of the defendants, there is no complete diversity between the parties.  The motion to remand will be granted and the case will be remanded to the Wayne County, Michigan circuit court.

I.

Plaintiff Blue Cross Blue Shield is a non-profit health care corporation organized under Michigan law with its principal office in Michigan.  Plaintiff Blue Care Network is its wholly owned subsidiary.  Blue Cross writes health insurance policies that it sells to customers.  Those customers pay an annual premium, and when they incur a covered health care expense, they (or their providers) submit a claim and Blue Cross, from its own funds, pays all or a portion of it under its schedule.

Blue Cross also provides administrative services to other, "self-funded" customers — usually businesses that maintain self-funded health care plans (SFPs) of their own. That means that the SFPs pay the medical care costs of their employees from their own revenue (usually up to a stop-loss limit), instead of purchasing health insurance for them.  The SFPs sign a contract with Blue Cross for Blue Cross to act as a third-party administrator for health care claims. The parties refer to those contracts as the Administrative Services Contracts (ASC).  Under the ASCs, Blue Cross receives, processes, and pays health care claims from the SFPs' employees; provides the SFPs with stop-loss insurance coverage; and allows the SFPs' employees access to Blue Cross's provider networks and their discounted rates.  It then bills the SPFs for the healthcare costs plus its administrative fees.  Under that arrangement, the cost of the employee health care, including prescription drugs when allowed, is borne by the SFP.

Among the drugs covered by the SFPs and by Blue Cross for its insurance customers is lidocaine, a common anesthetic agent administered via injection and also by patches applied to the skin. The later delivery device is marketed under the brand name Lidoderm.  Lidoderm is manufactured and marketed by defendants Endo Pharmaceuticals, Inc., Teikoku Seiyaku Co. Ltd., and Teikoku Pharma, USA (the Endo/Teikoku Defendants).  A generic version of the patch was developed by defendant Watson Laboratories, Inc., and Watson Pharmaceuticals, Inc., which acquired defendant Allergan, Inc. in January 2013 (the Watson Defendants).

Blue Cross alleges that around May 28, 2012, the Endo/Teikoku Defendants entered into a "pay-for-delay" agreement with the Watson Defendants in which the Watson Defendants agreed to delay release of their generic version of lidocaine patches until September 15, 2013.  Blue Cross says that while the generic version had not yet been approved by the FDA, such approval was "imminent," and eventually occurred on August 23, 2012.  In exchange for this delay, says Blue Cross, the Endo/Teikoku Defendants gave the Watson Defendants $96 million worth of brand-name Lidoderm to sell.  And the Endo/Teikoku Defendants promised to delay selling their own version of the generic lidocaine patches for 7.5 months following the Watson Defendants' release of their generic version, holding off until May 2, 2014.  This scheme, Blue Cross contends, inflicted anti-trust injuries and damages on it and the SFPs, which had to pay more for the branded version of lidocaine patches far longer than they should have but for the pay-for-delay agreement.

Blue Cross alleges that under the scheme, the Endo/Teikoku Defendants were able illegally to extend and maintain their monopoly in the market for lidocaine patches for 13 months.  That also resulted in a delayed introduction of an authorized generic version, which allowed the Endo/Teikoku Defendants to maintain super-competitive prices for lidocaine.  Finally, the scheme allocated 100% of the generic market for lidocaine to the Watson Defendants for 7.5 months.

-3-

This is not the first lawsuit related to the pay-for-delay agreement. The same conduct alleged in this action was the subject of a series of lawsuits beginning in November 2013, including a lawsuit brought on behalf of a class of end-payors situated similarly to the plaintiffs here. These class action cases were eventually consolidated by the Judicial Panel on Multidistrict Litigation in the Northern District of California, where they were litigated over the course of several years (*In re Lidoderm Antitrust Litigation*, MDL 2521, 3:14-md-02521). The class actions finally resolved through settlement in September 2018. The plaintiffs were class members and did not opt out of the class settlements. But the settlement agreement did not release claims under MARA or any other state law.

On September 16, 2019, Blue Cross filed a two-count complaint in the Wayne County, Michigan circuit court alleging violations of MARA and unjust enrichment. The defendants removed the case to this Court asserting diversity jurisdiction under 28 U.S.C. § 1332(a).

Blue Cross brought this action not only for itself but also for a number of SFPs that, it says, suffered antitrust injuries for having to pay too much for lidocaine patches. Blue Cross identified over 450 SPFs with whom it has ASCs. Relevant to the remand motion, at least 13 are incorporated in Delaware. That is significant, because Endo Pharmaceuticals, Inc. is a citizen of Delaware and Pennsylvania.

## II.

The parties agree with these basic points: *First,* federal district courts are courts of limited jurisdiction, and the burden of establishing subject matter jurisdiction rests with the defendant, as the party removing the case and asserting federal jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). *Second,* "'[a]ll doubts as to the propriety of removal are resolved in favor of remand.'" *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.,* 401 F.3d

701, 704 (6th Cir. 2005) (quoting *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999)), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576 (2008). *Third*, although 28 U.S.C. § 1441(b) permits a defendant in a civil action to remove cases originally filed in state courts to federal district courts where there is diversity of citizenship between the parties, federal diversity jurisdiction "exists only when no plaintiff and no defendant are citizens of the same state." *Jerome-Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir. 1999) (citing *United States Fidelity & Guar. Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1089 (6th Cir. 1992)); *see also Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005) (holding that a federal court has jurisdiction under 28 U.S.C. § 1332 only if there is "complete diversity between all plaintiffs and all defendants" (citing *Strawbridge v. Curtiss,* 3 Cranch 267 (7 U.S.) 267 (1806)). *Fourth*, for diversity purposes, a corporation is a citizen both of the state of incorporation and where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).

There also appears to be no dispute over the reality that if the citizenship of the SFPs is considered, there is no complete diversity, and therefore no subject matter jurisdiction in a federal court under 28 U.S.C. § 1332(a). Blue Cross, well aware of that, opted to file its case in state court. It chose that jurisdiction because of the cautionary tale told by the case of *In re Lorazepam & Clorazepate Antitrust Litigation*, 631 F.3d 537 (D.C. Cir. 2011). In that case, health care companies brought suit in federal court on behalf of themselves and their SFPs against a generic drug manufacturer and two companies engaged in selling chemicals to pharmaceutical companies, alleging violations of state antitrust law. A jury found for plaintiffs and awarded them over $76 million dollars. When the defendants appealed, they moved to dismiss for lack of subject matter jurisdiction, arguing that at least one SFP, and potentially more, were from the same state as at

least one of the defendants.   The Court of Appeals for the District of Columbia agreed, finding

that the citizenships of the unnamed SFPs counted in the diversity calculus.  It reasoned:

> The claims of the self-funded customers were asserted at the outset.  Those customers, not
> the named plaintiffs, were the ones who felt the effect of the defendants' alleged violations
> with regard to the claims asserted on their behalf.  And they were the ones who had the
> right to sue under the substantive law.

*Lorazepam*, 631 F.3d at 540 (citation omitted).  Because the health care companies at most acted

as agents for the SFPs "in recovering damages on their claims," the SFPs were "the 'real and

substantial' parties with respect to the claims asserted on their behalf."  *Ibid*. (citations omitted).

Although the court of appeals found diversity jurisdiction was lacking, it did not vacate the

judgment, because "the posture of this case suggests a different disposition."  *Id*. at 542.  The court

of appeals invoked Federal Rule of Civil Procedure 21, which permits a court to add or drop a

party at any time on "just terms," Fed. R. Civ. P. 21, and sent the case back to the district court to

determine if non-diverse SFPs could be dropped and the damage award adjusted accordingly.  And

that's what the district court did on remand in order to save the otherwise unassailable verdict.

A district court charted the same course, following *In re Lorazepam*, counting the

citizenship of a health insurer's SFPs who sued a surgery center and its limited liability companies,

asserting state law claims based on an alleged out-of-network kickback scheme.  *Aetna Life Ins. v.*

*Foundation Surgery Affiliates*, *LLC*, 358 F. Supp. 3d 426 (E.D. Pa. 2018).  The district court found

that "[the SFPs], not Aetna Life as the plan administrator, were the ones who felt the effect of

Defendants' alleged violations with respect to the claims Aetna asserts on the [SFPs] behalves."

*Id*. at 435.  The district court also invoked Rule 21 to save jurisdiction, because the litigation had

been pending in that court for a long time.

The defendants here contend that *Lorazepam* and *Aetna* are distinguishable or outliers.

They rely mainly on *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), for the rule that

diversity must be evaluated by looking only to the named parties who are "real and substantial parties to the controversy."   *Id.* at 460 (citing *McNutt v. Bland*, 2 How. (57 U.S.) 9, 15 (1844)). In that case, trustees of a business trust brought suit against a bank to require it to honor a loan commitment concerning real estate investments.  The trustees held "exclusive authority over this property free from any power and control of the Shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in their own right." *Id.* at 459 (quotation marks omitted). The Court determined that the trustees held legal title to the trust assets, they were not acting as "mere conduits" for the shareholders, and their interest in the assets it sought to protect in the litigation was "real and substantial." *Id.* at 465.  Therefore, it held, the trustees were the "real part[ies] to the controversy for purposes of diversity jurisdiction," *id.* at 464, "without regard to the citizenship of the [over 9,500] trust beneficiaries," *id.* at 466.

*Navarro* establishes some basic ground rules, but it does little to advance the defendants' argument.  It is clear that a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of "real and substantial" parties to the controversy.  *See* 6A Charles Alan Wright et al., *Federal Practice and Procedure*, § 1556 (3d ed. 2010).  Relatedly, Federal Rule of Civil Procedure 17 requires that "[e]very action shall be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a).  That means that an "action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." 6A Charles Alan Wright, et al., *Federal Practice & Procedure*, § 1543, at 334 (2d ed. 1990). "Rule 17 does not, however, affect jurisdiction and relates only to the determination of proper parties and the capacity to sue."  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193–94 (2d Cir. 2003) (citing 4 James William Moore, et al., *Moore's Federal Practice*, § 17.13[1] (3d ed. 1999)).

There is, however, a "'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy." *Navarro*, 446 U.S. at 462 n.9.  But "the two rules serve different purposes and need not produce identical outcomes in all cases." *Ibid.*  Instead, when assessing diversity of citizenship, the SFPs count if they are "real and substantial part[ies] to the controversy." *Lorazepam*, 631 F.3d at 540.

Based on the evidence before the Court, there can be no doubt that they are.  Although the ASCs authorize Blue Cross to process claims, deal with providers, and sue drug companies for overpayments on behalf of SFPs, the SFPs retain the right to pursue such actions on their own.  And any recovery through Blue Cross is remitted to the SPFs.  That makes sense.  Blue Cross's relationship with each SPF was nothing more than a claims administrator, paying their employees' claims with the SFP's own money.  If there was an overpayment, the damaged party was the SFP, not Blue Cross.  Each SPF has a real and substantial interest in the recovery, and Blue Cross, for that purpose, serves as a conduit.  The citizenship of the SFPs counts in the jurisdictional equation.

Blue Cross alleges, and the defendants do not dispute, that Endo Pharmaceuticals, Inc. is a citizen of Delaware and Pennsylvania.  After oral argument, Blue Cross was ordered to submit a list of the SFPs, along with their states of incorporation.  Its filing includes hundreds of SFPs, several of which are incorporated in Delaware, including A.K. Steel & Steel Dynamic, Inc.; Active and Aero Group, Inc.; and Altair Engineering, Inc.  The failure of complete diversity, and the absence of a substantial federal question, leaves the Court without subject matter jurisdiction.

A final question is whether the Court should follow the lead of the *Lorazepam* and *Aetna* courts to strip out those SFPs that destroy complete diversity.  There is no good reason to do that at this stage of the case.  That is particularly true when the plaintiffs originally chose the state

forum, the case is in its early stages with no scheduling order, and eliminating an undetermined number of SFPs would needlessly trim the plaintiffs' damages claim.

III.

A defendant may remove a case from state court to federal court only if "the district courts of the United States [would] have [had] original jurisdiction" over the case.  28 U.S.C. § 1441(a). Without complete diversity of citizenship, this Court has no basis to exercise subject matter jurisdiction over the dispute.

Accordingly, it is **ORDERED** that the plaintiffs' motion to remand (ECF No. 28) is **GRANTED**.

It is further **ORDERED** that the case is **REMANDED** to the Wayne County, Michigan circuit court.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:  April 14, 2020